ELLIOTT & CO. v. YOUNGSTOWN CAR MFG. CO.

(Circuit Court of Appeals, Third Circuit. August 30, 1910.)

1. PATENTS (§ 16*)—INVENTION—ENLARGEMENT OF USE IN SAME ART.

Photography and blue printing are simply different phases of the art of light printing, and the mere transfer of a device used in one to the other does not involve patentable invention.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 16.*]

2. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—BLUE PRINT MACHINE.

The Fullman patent, No. 771,774, for an apparatus for copying drawings (a blue print machine), which consists of an upright glass cylinder around which are wrapped the drawing and sensitized paper, an arc light which is lowered into the cylinder by a clockwork mechanism and an automatic cut-off for extinguishing the light when it reaches the bottom was anticipated in the prior art in all respects except in the specific means shown for effecting the automatic cut-off. Claims 1, 2, 3, and 5, which claim such means broadly, are void for anticipation. Claim 4, which is limited to the particular means described in the specification, held valid, but not infringed.

3. PATENTS (§ 112*)—PRESUMPTION IN FAVOR OF—WHEN NOT INDULGED.

The ordinary presumption in favor of a patent, because of the action of the Patent Office in allowing it, is not to be indulged, where controlling references were not cited or considered in that connection.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 162–165; Dec. Dig. § 112.*]

4. PATENTS (§ 35*)—RECOGNITION BY THE PUBLIC—CONSIDERATION TO BE GIVEN TO.

The recognition of the patent by the public, as where it has been bought up under the advice of counsel, instead of being contested, or where licenses have been taken out or infringement discontinued on the failure to negotiate for them satisfactorily, are matters which are entitled to consideration on the subject of invention, but are of no significance against an adverse showing.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 39; Dec. Dig. § 35.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. PATENTS (§ 297*)—INTERFERENCE PROCEEDINGS—EFFECT OF ON SUBSEQUENT LITIGATION.

The result of interference proceedings is not conclusive of invention in a subsequent suit for infringement between the same parties. The only question there is one of priority, and while it is no doubt persuasive that in those proceedings invention was affirmed by one who subsequently denies it, it is not to be allowed to prevail over other considerations which control it.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 486; Dec. Dig. § 297.*]

6. PATENTS (§ 18*)—INVENTION—CONTEMPORANEOUS APPLICATION BY SEVERAL PARTIES FOR THE SAME DEVICE.

Semble, that, where several persons contemporaneously apply for patents for the same device, the fact that they caught the idea at the same time goes to show that it was simple and obvious, and that it did not require inventive genius to produce it.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 18; Dec. Dig. § 18.*]

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

Suit in equity by the Youngstown Car Manufacturing Company against Elliott & Co., Reinbold Herman, and Byron K. Elliott. Decree for complainant, and defendants appeal. Reversed.

For opinion below, see 173 Fed. 315.

T. A. and J. B. Connolly, for appellants.
F. W. H. Clay, for appellee.

Before BUFFINGTON and LANNING, Circuit Judges, and ARCHBALD, District Judge.

ARCHBALD, District Judge. The patent in suit is for a blue print machine. As specified in the patent, the device consists in an upright glass cylinder or frame, around which are wrapped the drawing to be copied and the sensitized paper to which it is to be transferred; the two being kept in intimate contact by a canvass envelope or cover drawn down over them. The printing is done by electric light, and this is supplied by an arc lamp suspended immediately over the open top of the cylinder, on a cord and pulley, by means of which it is let down into the cylinder to do the printing. As the lamp moves down the axis of the cylinder, it is at all times equally distant from the paper to be printed upon, and thus affects all parts of it equally. And being allowed to descend by a controlled and even motion, regulated by a clockwork attachment, and the current being cut off automatically, immediately upon the lamp reaching the bottom, not only is the printing done evenly, as it proceeds, but there is no over printing, such as results where the light is not cut off as soon as the operation is completed. The cut-off device, as described in the patent, consists of a self-opening trip-switch inserted in the electric circuit, which is held in closed position during the printing operation, by means of a catch or stop mounted on the frame of the switch, which is disengaged so as to open the switch and break the circuit, when a counterweight to

the lamp which is drawn up as the lamp descends comes in contact with certain mechanism by which the catch or stop is drawn away.

If Fullman, the patentee, was the original inventor of a device of this character, there can be no question as to his right to be protected in it, and, so far as the patent was found to be expressive of the invention, it no doubt would be valid. It appears, however, that the principal part of the present apparatus was the work of one Hall, a British inventor, who patented it in England in 1897, and that Fullman got his ideas from this, the only new feature which he introduced being the automatic cut-off, to put out the light when the process was completed, this being done by hand in the Hall apparatus. The novelty of the device is thus made to depend on this added feature. That it is important to have the light cut off at just the right moment must be conceded. Not only is electricity economized and over printing avoided, but, being automatically regulated, the exact amount of exposure desired is secured, and the operator is able to dismiss it from his attention, once the apparatus is set in motion. But unfortunately for the inventor an automatic cut-off was not new in photographic printing, being shown in the Urie photographic printing machine (1892), in the Schwarz (1898), as well as in the earlier British patent (1897) to Suter. In the Urie apparatus electric light is used, the same as in the patent in suit; the fact that it is incandescent instead of arc being immaterial; and the current is automatically cut off and turned on by a switch, in the form of a contact plate, located on the power shaft by which the machine is operated, and rotated by it, intermittent electrical connection being thus brought about, and the lights turned on and turned off, according to established periods in the cycle of the machine. In order to shorten or lengthen the electrical connection, the plate is made in two sections, which are adjusted on each other circumferentially, and are held together by a suitable clamping screw. So in the Schwarz machine, where electric lights are also used, provision is made for lighting and extinguishing them automatically, the current being alternately established and broken, coincident with the exposure desired, by means of cams directly connected with and operated by the mechanism and motive power by which the different sections of the sensitized paper are moved forward successively to receive impressions. In the Suter, also, there is an automatic cut-off, of some intricacy, which, although operated by independent motive power, is so co-ordinated with the other parts of the apparatus that, as each section of the sensitized paper is brought into operative position, an electric light below it is automatically turned on, and is again turned off when the printing is completed. The distinction is attempted with regard to these machines, that they are found in the photographic, and not the blue printing, art, and the refinement is even indulged that progressive blue printing is an art by itself. But photographic copying or light printing is all one; photography and blue printing being simply different phases of it. Nor is progressive blue printing anything apart. In each the plate or tracing which carries the picture or figure to be transcribed is exposed to the light which filters through it, transferring it by the effect of light and shade to the sensitized paper prepared to receive it. That blue prints could be successfully made on the

Urie, the Schwarz, or the Suter apparatus is not to be doubted, the same as photographs, so called, on the Hall or Fullman, provided a cylindrical frame would not stand in the way. Once, therefore, that an automatic cut-off was made use of in either of these earlier devices, it was conclusive upon the novelty of the idea upon every one coming after; and the only thing open to later inventors was the particular means that might be adopted for the accomplishment of this purpose. To the extent that this is observed the device of the patent may be good. But not beyond that.

An examination of the patent, however, discloses that, as to a majority of the claims which are relied on,[1] it is not so confined, these being stated so broadly that any kind of an automatic cut-off comes within their terms. Thus, in the first, second, third, and fifth claims, "means to automatically break the circuit for the purpose of extinguishing the light"; "an [i. e., any] automatic device to cut off the light upon the completion of the printing process;" "means for automatically opening the switch when the lamp has completed its travel;" and "means," etc.—the same as in the first claim—are the expressions employed. Each of these, if taken literally, is realized by any character of automatic cut-off, as applied to a blue print machine of the Hall type, and that, indeed, is the breadth of construction that is contended for. The fourth claim, which is also relied on, is not open to this objection; the cut-off declared for being "the automatically-operated switch controlling the light-circuit," which is to be referred to the cut-off described in the specifications and saves the claim. But, so far as the others go beyond this and call for "means," unspecified, by which the cut-off of the current is to be automatically brought about, they are met by the references which have been cited, and cannot be sustained. The court below seems to have been impressed with the idea that in the Urie, Schwarz, and Suter the motive power which actuated the cut-off was external to the machine itself and not dependent for its action on the movement of the lamp in relation to the

---

[1] The following are the claims of the patent referred to.

(1) In an apparatus for copying or reproducing drawings, etc., the combination of a cylinder, means to support the subject-matter to be copied or reproduced upon the exterior of said cylinder, an arc-lamp adapted to be lowered into the interior of said cylinder, and means to automatically break the circuit for the purpose of extinguishing the light.

(2) A printing frame and a lamp, movable one in relation to the other, in combination with an automatic device to cut off the light upon the completion of the printing process.

(3) In an apparatus for copying drawings, etc., the cylindrical printing-frame, the suspended electric arc lamp and means for controlling its descent within the frame, an electric switch controlling the light-circuit, and means for automatically opening the switch when the lamp has completed its travel.

(4) In an apparatus for copying drawings, etc., the cylindrical support for the drawing, a suspended lamp arranged to descend axially within the frame, a governing apparatus for controlling the descent of the lamp, and the automatically-operated switch controlling the light-circuit.

(5) In an apparatus for copying or reproducing drawings, etc., the combination of a cylinder adapted to be rotated, means to support the subject-matter to be copied or reproduced upon the exterior of said cylinder, an arc-lamp adapted to be lowered into said cylinder, and means to automatically break the circuit for the purpose of extinguishing the light.

frame, but, however this may be and whatever of novelty may reside in the agency of the lamp in effecting the cut-off, as a feature of the device in suit, it does not change the fact that the automatic cutting off of the light, when the printing is through, was old in the art, and that no one therefore could monopolize the idea such as is attempted here. Stress is also laid on the fact that, in the interference proceedings which were declared in the Patent Office between Fullman on the one hand, and Herman, under whom the defendants are acting, on the other, invention was asserted, and the right of a patent on the strength of it contended for, the case being carried in the end to the Court of Appeals of the District of Columbia, and the right of Fullman at every stage sustained. But the scope of the invention was not involved in those proceedings, nor whether, as now, it was patentable if broadly maintained. The only question there was one of priority between the two contestants, and that is all for which the decision stands. It is no doubt persuasive that in those proceedings invention was affirmed by the parties who now deny it; but that cannot be allowed to prevail over other considerations by which it is necessarily controlled. Nor is the ordinary presumption to be indulged in favor of the patent, because of the action of the Patent Office in allowing it; the Urie, Schwarz, and Suter patents, as it appears, not having been referred to, as they have been here. There is enough, moreover, for the presumption to act upon (if it be regarded as important), in the particular device described in the specifications and declared for in other claims which are good; all that is now denied to the invention being the right to any extended breadth of scope. The same also is to be said of the alleged recognition which has been given to the invention by the public, the complainant, as it seems, under the advice of counsel having bought up the patent rather than contested it, and other parties having either taken out licenses, or discontinued infringement upon failure to negotiate for them upon satisfactory terms. These are matters which are no doubt entitled to consideration under ordinary circumstances, but they are of no significance against the showing here. Nor is it necessary to dwell upon the suggestion that applications were made for blue print machines with an automatic cut-off by four different inventors about the same time, Fullman and Herman among the rest. The fact that so many persons caught the idea goes rather to prove that it was simple and obvious, and not that it required inventive genius to conceive. It is not like the case where the art is waiting for the device, and inventors striving unsuccessfully to produce it, under which circumstances invention may well be held to appear.

The invention not being able therefore to be asserted broadly, the claims in controversy where this is done are invalid and the patent to that extent cannot be sustained. Nor is the complainant bettered if the cut-off described in the specifications is read into the claims in order to save them, assuming that this can be done, the defendants in that case not infringing upon them, their device in this respect not being the same.

It remains to consider the effect to be given to the fourth claim, as to which, as already intimated, no objection can be made. One of the elements which is there declared for, however, is "a governing ap-

paratus for controlling the descent of the lamp"; and this, as described in the specifications, to which resort for it must be had, consists of a clock escapement, the same as in the Hall machine, from which the appliance is taken bodily. And there being no novelty, by reason of the Hall, in controlling the descent of the lamp, any other means that might be devised for doing so was open to the defendants, the present inventor, as to this feature, also being confined to the particular means shown. But this the defendants do not employ, the control in their machine being effected by means of a hydraulic cylinder and piston, which is not at all the same. This is enough to distinguish the device, but there is also a difference in the cut-off used. This does not consist of a counterweight and tripping mechanism, such as are described in the specifications, the cutting off of the current in the defendants' machine being brought about by a switch contact, made by a stop attached to the cord on which the lamp is hung, which is drawn into contact as the lamp reaches the bottom of the frame. It is true that in both the complainant's and the defendants' machine the lamp as it descends draws up the particular means by which the cut-off is produced, and to this extent there is a certain measure of similarity between the two. But that is as far as it goes, the short circuiting by positive contact, which takes place in the one instance, not being at all the same as the trip-switch cut-off, by which the current is broken in the other. In neither of these two respects therefore is the fourth claim realized in the defendants' device, and infringement of it is not thus made out. And the same is true, as it will be observed, of the other claims relied on, if narrowed down by reference to the specifications sufficiently to be sustained.

It results, therefore, that, however considered, the complainant's case is without merit, and that the decree must be reversed with directions to dismiss the bill on the ground of noninfringement, with costs.