BISHOP–BABCOCK–BECKER CO. v. ARNHOLT & SCHAEFER
BREWING CO.

(District Court, E. D. Pennsylvania. February 6, 1915.)

No. 543.

1. PATENTS ⬩312—SUIT FOR INFRINGEMENT—EVIDENCE OF INVENTION.
Where the question of invention is in issue in an infringement suit, and
was also in issue in interference proceedings in the Patent Office before
the patent was granted, the record in such proceedings is admissible for
the purpose of showing what the Patent Office had under consideration,
and augmenting the presumption of invention arising from the allow-
ance of the patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 544–549; Dec.
Dig. ⬩312.]

2. PATENTS ⬩328—VALIDITY AND INFRINGEMENT—BOTTLE FILLING MACHINE.
The Champ patent, No. 956,285, for a bottle filling machine for filling
beer bottles, commercially known as a rotary, automatic air lift, counter
pressure, bottle filling machine, in which the bottles are automatically
lifted to a connection with the filling tubes, held against a sealing head
while being filled, and again lowered by a compressed air mechanism,
was not anticipated, covers a true combination, and discloses patentable
invention; also *held* infringed.

In Equity. Suit by the Bishop-Babcock-Becker Company against the
Arnholt & Schaefer Brewing Company. On final hearing. Decree for
complainant.

Jesse B. Fay and John F. Oberlin, both of Cleveland, Ohio, and Fen-
ton & Blount, of Philadelphia, Pa. (Robert M. See, of Cleveland, Ohio,
on the brief), for plaintiff.

Flanders, Bottum, Fawsett & Bottum, of Milwaukee, Wis., and Fra-
ley & Paul, of Philadelphia, Pa., for defendant.

THOMPSON, District Judge. The bill charges infringement of let-
ters patent No. 956,285, for a bottle filling machine, issued April 26,
1910, to the complainant, as assignee of Joseph H. Champ, and prays
for an injunction and accounting. The defendant of record is using
at its brewery in Philadelphia two bottle filling machines which are al-
leged to embody the mechanism set forth in the claims in issue of the
Champ patent. The suit is defended by Henes & Keller Company, a
copartnership, of Menominee, Mich., which manufactures and sells
the machines which are alleged to infringe.

Claim 1 of the patent, which may be regarded as fairly illustrative
of all the claims, reads:

"In a bottle filling machine, the combination of a rotatable upright shaft,
a tank carried by said shaft, a series of bottle filling valves connected to said
tank, a series of fluid pressure bottle lifts carried by said shaft, and means
for automatically operating said bottle lifts by said fluid pressure during the
rotation of the shaft."

The complainant's and the defendant's machines are both used and
adapted for use in filling bottles with beer. Leaving out of consid-
eration, as unessential to the consideration of the case, various me-

chanical appliances, which are described in detail and at great length by the experts, the machine of the complainant, as well as that of the defendant, consists of a rotatable upright shaft supporting a tank to which the beer, charged with carbonic acid gas, is conveyed, and above the level of the beer in the tank compressed air is conveyed to prevent the escape of the gas from the beer while in the tank. A series of bottle filling valves are connected to the tank and to tubes through which the beer flows when the bottles are in place for filling. The revolving shaft also carries a series of bottle lifts operated by air pressure for lifting the bottles, so that as the bottle is rising the filling tubes are inserted into the necks of the bottles and reach a point near the bottom of the bottles. The air lifts hold the mouth of the bottle against a sealing device, and by means of the valves the compressed air in the beer tank is introduced into the bottles before the flow of beer begins. When the pressure of the compressed air is the same in the bottle as in the beer tank, the beer is allowed to flow into the bottle. By this means the beer flows gently into the bottom of the bottle without the escape of the gas and consequent foaming of the beer, and by automatic action incident to the revolution of the shaft the valves are closed. When the bottle is filled, the flow of beer is shut off, and the bottle lowered from around the filling tube, making way for the next bottle on the next air lift.

The means for filling bottles from a tank containing beer and compressed air, mounted upon a rotatable shaft and the introduction of compressed air into the bottles from the tank prior to the introduction of the beer, in order to prevent escape of the gas and consequent foaming of the beer and flatness after bottling, are common to what is known as rotary, counter pressure, bottle filling machines, are not new, and are features of defendant's patent, No. 655,443, of August 7, 1900, to Keller. The claims in suit are for a combination of the actual filling mechanism with the automatic air lift operating during and by means of the rotation of the shaft. The machine claimed to be embodied in the Champ invention and in defendant's construction constitutes what is commercially known as a rotary, automatic air lift, counter pressure, bottle filling machine. The advantage of the air lift in this combination over the old means of raising the bottle and pressing it against the sealing head is claimed to result from the gentle action of compressed air as a means of operating the lifts. Shock or violence in the handling of beer causes the gas to be released from the liquid, causing foaming and flatness, and such action as will avoid turbulence is eminently desirable in filling and handling beer in bottles.

The invention is claimed to be an improvement over counter pressure filling machines, in which the bottles are lifted to, held in, and lowered from filling position by the mechanical action of a cam during the rotation of the machine, in the results accomplished by its gentle action during the process of filling, its capacity for accommodation to bottles of various sizes, economy of power, and the absence of the strain upon the shaft and wearing parts of the machine during rotation, which had been caused by the harsh action and heavy pressure of the previously used cam lift.

It is conceded that the defendant's machine was not manufactured and sold prior to the filing of the Champ application, but was manufactured and sold prior to the issue of the Champ patent.

The defenses set up are noninfringement, upon the ground that the defendant's machine is constructed upon the principle of the Keller patent, No. 655,443, patented August 7, 1900, prior to Champ's alleged invention of the machine of the patent in suit, and more than two years prior to Champ's application for the patent in suit, in combination with compressed air clamps, which are alleged to be clamps of general application, and to have no other function in the filling of bottles than the function of clamps either in the defendant's machine or in the machine of the Champ patent; and invalidity of the claims sued on, because the elements of the claims constitute mere aggregation, as distinguished from a patentable combination, and because they are completely anticipated by the prior art pleaded and proved by the defendant.

[1] Before considering the case upon the merits, disposition will be made of a preliminary motion of the defendant to strike out the exhibits offered in evidence by the complainant, consisting of Bastian patent, No. 1,000,971, and the Patent Office and the Court of Appeals record in interference No. 25,958, on the ground that they are incompetent, irrelevant, and immaterial items of evidence to either prove or disprove any issue in this cause. The defendant, during the taking of proofs, introduced in evidence the file wrapper and contents of the Champ patent, No. 956,285, which is the patent in suit. There is no dispute as to the materiality of the file wrapper to show the Patent Office history of the application, as bearing upon the validity and scope of the patent in suit.

During the pendency of the application for a patent, it was in interference with the Bastian patent above referred to, and the exhibits of the interference proceedings are offered in evidence for the purpose of showing what consideration the Patent Office gave to the questions of invention and patentability before the patent in suit was granted. Their admissibility for the purpose of augmenting the presumption of validity arising from the allowance by the Patent Office after a serious contest, which must have developed the characteristics of the patent and brought them pointedly into view, has been sustained in a number of cases. Milner Seating Co. v. Yesbera (C. C. A., 6th Cir.) 111 Fed. 386, 49 C. C. A. 397; Western Electric Co. v. Williams-Abbott Electric Co. (C. C.) 83 Fed. 842; Westinghouse Electric & Mfg. Co. v. Stanley Instrument Co. (C. C. A., 1st Cir.) 133 Fed. 167, 68 C. C. A. 523.

The defendant objects to the admissibility of this evidence, under the authority of the opinion of the Circuit Court of Appeals for this circuit in Elliott & Co. v. Youngstown Car Mfg. Co., 181 Fed. 345, 104 C. C. A. 175. The record of the interference proceedings, however, was not ruled out in that case as evidence to show what was under consideration by the Patent Office, but upon the ground that in the interference proceedings in that case the scope of the invention was not involved, and the only question there was one of priority between the two contestants. In the interference in the present case the issue of

invention of the patented machine was raised by motion upon the part of Bastian to dissolve the interference on the ground of lack of invention. In considering that motion, the Patent Office tribunals considered many prior patents which included two of those presented by the present defendant, and also other patents which the complainant claims are substantially similar to others which the defendant has here presented, which do not appear in the file wrapper.

For the purpose, therefore, of determining what the Patent Office had under consideration before the patent was granted, the interference proceedings are admissible under the authorities above cited, and the motion to strike out is denied.

[2] In support of the defense of noninfringement, it is urged that the defendant's machine is constructed in accordance with Keller patent, No. 655,443, with mechanical power substituted for manual power for revolving the machine, and with automatic compressed air clamps substituted for the manually operated spring and cam clamps of the machine of the Keller patent. It cannot be questioned that the defendant's machine, in its important functional parts and general principles of operation, corresponds closely with the machine of the Keller patent. It comprises a rotatable beer tank mounted upon an upright shaft. It is a counter pressure machine, and is provided with movable siphon tubes for transferring the beer from the tank to the bottles (in this immaterial respect differing from the complainant's machine in which the beer flows by gravity from the bottom of the tank into the bottle), filling heads, air and beer valves, mechanism for supplying the tank with beer and compressed air, for keeping the beer level in the tank at the right height and the compressed air pressure constant, all as in the Keller patent.

It differs from the machine of the Keller patent in the application of power for revolving the machine and the substitution of what is designated by the defendant as automatic compressed air clamps for the specific form of spring and cam clamps illustrated and described by that patent. These so-called automatic compressed air clamps consist of cylinders with pistons therein, and the compressed air is admitted below the pistons to clamp the bottles, and is exhausted from the cylinders to unclamp the bottles. The compressed air supply to the cylinders and the exhaust from the cylinders is automatically effected by and during the revolution of the machine. An examination of the construction and operation of these air operated pistons demonstrates that they are more than compressed air clamps, and more than mere substitutions for the clamps in the Keller machine. The clamp in the Keller machine is provided with jaws which firmly grasp the neck of the bottle, and a spring and cam mechanism pushes it tightly against the sealing head. Assuming that a compressed air clamp may be a mechanical substitute for the Keller spring and cam clamps, the compressed air mechanism of defendant's machine has other functions than those of a clamp. It automatically lifts the bottle to its filling position and lowers it when filled, in addition to its action in pushing and holding the bottle tightly against the filling head, accomplishing results which are not possible to nor present in the Keller clamp.

The defendant contends that the application of power to the machine of the Keller patent, No. 655,443, and the substitution of the so-called automatic compressed air clamps, is utterly without function, effect, or co-action with the bottle filling functions of the machine; that these changes have to do only with the bottle handling, and not with the bottle filling, and that this method of handling bottles and similar receptacles was old more than two years before Champ made his application for the patent in suit. If, in the defendant's machine, there is no union of function, effect, or action between the bottle filling and the bottle handling, the question arises, Where does one end and the other begin? The handling by means of the automatic air lifts is a useful and essential part of bottle filling. If the use of the automatic air lift device contributes to successful completion of the operation of filling, and its result is to render the bottled beer a better and more merchantable article, and this result is accomplished by a continuous operation in one machine in which the air lift acts before, at the time of, and after the flow of the beer filling the bottle, there must be a joinder of function, effect, and action between the parts of the combination, and the air lift is an essential feature of the filling machine. The defendant's machine substantially reproduces in its construction and operation the complainant's machine, and infringement follows if the complainant's claims cover a patentable combination, and not a mere aggregation of old mechanical elements known in the prior art.

The defendant offered in evidence the Christie patent, No. 603,874, as a complete anticipation of the claims sued upon, and as evidence that it, in connection with the German patent to Boldt and Vogel, No. 90,615, would suggest to a mechanic skilled in the art the complainant's device. These patents were considered by the Patent Office in the interference proceeding, and I can see no reason, giving due weight to defendant's evidence and contentions, to differ from the conclusions stated by the examiners in chief in that proceeding, as follows:

"Christie's device, in the first place, is from an entirely nonanalogous art. The device is an apparatus for testing tin cans to determine whether or not they are free from defects. It comprises a rotating table having thereon a series of devices onto which the cans are fed from a chute $K'$ in a horizontal position, onto four lugs $k$ (Figure 3). Two of these lugs are carried on a part fixed to the table and the other two are carried on a movable clamping head $C^4$; this clamping head being pushed up by a pneumatically actuated piston. When so clamped air under pressure is admitted, the device containing a sight apparatus shown in Figures 2 and 4 for determining whether or not the can is tight. The can is not filled with liquid of any kind, much less with a liquid charged with carbonic acid gas. The devices are not located in a position in which liquid could be inserted into the can, nor are the cans raised and lowered by pneumatic pressure. The only suggestion that we can find is of an arrangement of valve mechanism on a rotating table which will operate in succession a series of pneumatic cylinders. Placing the Colby and the Christie patents side by side, and assuming that one familiar with the bottling art knew of both, we fail to see how even the idea of using pneumatic cylinders for raising and lowering the bottling devices would be suggested. Nor would the addition to this group of patents of the German patent suggest the devices claimed. In the German patent the bottle carrying device is raised by a spring, and is held up, but not raised, by pneumatic pressure."

The United States Macdonnell patent, No. 211,413, and the Macdonnell British patent, No. 3,902, are also cited by the defendant. These patents are for substantially the same machine. This is not even a counter pressure machine, in which a heavy air pressure is maintained in the liquid tank and bottle to counteract the tendency of gas in the liquid to escape, and it has no bottle lift to raise the bottle into sealing contact with the collar above the filling tube. The positioning of the filling tube in the bottle is not accomplished by lifting the bottle, but by lowering the filling tube into the bottle, and the bottle is only slightly elevated in order to press its mouth against a sealing head. Both movements are accomplished by means of a cam, and not by air pressure.

Neither does Boldt & Vogel suggest the combination claims of the patent in suit, when associated with the above-named patents cited by the defendant. This machine is not a rotary machine, is not automatic, all of the operations being produced by hand, and the bottles are neither raised nor lowered by air pressure.

If we are to separate the filling mechanism from the lifting, clamping, and lowering mechanism, we have merely a crude and incomplete portion of the bottle filling operation. The result of the complainant's invention is that the bottles can be successively placed upon the pneumatic bottle lift as it arrives in its rotation at a point before the operator. The bottle is carried forward and upward on its axis, and, as it proceeds, is lifted into a position where it envelops the filling tube and is pressed against the filling head; the valves then permitting the compressed air to escape into the bottle. The beer flows gently into the bottom of the bottle, filling it gently, without any agitation and consequent loss of gas. The bottle is gradually and gently withdrawn as the lift proceeds upon its rotating course, and is delivered into a trough at the end of the journey, filled and sealed, without jar upon the machine and agitation causing turbulence in the beer. The combination of the filling device and its accompanying mechanisms and the air lift apparatus, which so effectively performs its work, produces a result which is not present in any example of the prior art. The invention, therefore, is something more than a mere aggregation of old elements, and must be regarded as a novelty in the art of bottle filling machines. That the complainant's invention was successful is evident from the large business which has been built up and in the very general use into which the machines manufactured under its patent have come.

The language of the Supreme Court in Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U. S. 428, 31 Sup. Ct. 444, 55 L. Ed. 527, is pertinent:

"Knowledge after the event is always easy, and problems once solved present no difficulties, indeed, may be represented as never having had any, and expert witnesses may be brought forward to show that the new thing which seemed to have eluded the search of the world was always ready at hand and easy to be seen by a merely skillful attention. But the law has other tests of the invention than subtle conjectures of what might have been seen, and yet was not. It regards a change as evidence of novelty, the acceptance and utility of change as a further evidence, even as demonstration."

So far as appears by the record, no other device or apparatus ever before operated upon the same principle in accomplishing the same or a similar result. The presumption in favor of the validity of the patent, augmented by the evidence of citation of the Christie and Boldt & Vogel patents in the interference proceedings, is not overcome by any of the citations of prior art by the defendant.

A decree will be entered in favor of the complainant for an injunction and accounting.