## CAHILL et al. v. NEW ORLEANS PUBLIC SERVICE, Inc.

District Court, E. D. Louisiana. November 5, 1929.

No. 18690.

W. J. & H. W. Waguespack, Henry W. Robinson, James J. Cullinane, and John J. Reilley, all of New Orleans, La., for complainants.

Dufour, Rosen & Kammer, of New Orleans, La., and Church & Church and Clarence B. Des Jardins, all of Washington, D. C., for respondent.

BORAH, District Judge. This is a suit charging the defendant with infringement of letters patent of the United States, No. 1,603,580, issued October 19, 1926, to Simon Cahill, Jr. This patent, which was granted on a second or renewal application filed July 6, 1926, relates to means for sealing openings in electric meters, and the defendant is said to infringe because it has used and equipped some of its standard meters with metallic rings and brass sealing sleeves or

washers in an effort to prevent tampering with its instruments and the consequent theft of current. The defenses are that the patent is invalid because, in view of the prior art, the matter claimed therein was not an invention; that the use of rings and washer sleeves by defendant in its meters was not an infringement; that the alleged invention was abandoned by Cahill before patenting; and that, if the subject-matter of the patent involved invention, Cahill was not the original inventor thereof.

The patent in suit illustrates an electric meter of well-known form having a stationary housing or base section *1* on which the recording mechanism is mounted, and a removable housing section or cover *2* usually formed of glass. The meter includes as a part of the registering mechanism a rotating disk *5* which revolves with the operating mechanism of the recorder at a rate proportional to the consumption of current. The removable cover has its lower edge seated on the meter base and is secured in place by a pair of bolts *8* extending from the base through bolt holes *9* in the front side of the cover *2*, nuts *10* being threaded on the outer ends of these bolts and engaging the cover. The nuts are usually held by a wire seal so that they cannot be removed without breaking the seal. The cover when fastened in place incloses the operating parts of the meter and is supposed to prevent any interference with the rotation of the disk in response to the consumption of current. In a number of cases consumers had found that they could insert a wire or other small instrument through some one or other of the joints between the cover and base or bolts for the purpose of holding the rotary disk against rotation and consequently throwing the recording means out of play. The object of the invention is to overcome these difficulties in a manner which will not necessitate any changes in the meter construction.

The idea expressed in the patent is to provide sealing members to stop up these holes or joints so tightly that no wires or the like can be inserted through them. A favorite point of attack was the joint between the cover and the base, where the lower edge of the cover rests on the base. A ring of felt was usually interposed between the two housing sections, along their line of contact, and the patentee proposes to substitute for this soft ring of felt or the like a ring of steel or other desired hard material that cannot be picked away or cut. It was also a common practice to insert wires or the like against the disk through the joints where the

bolts pass through the holes in the removable cover; consumers having found out that they could loosen the nuts on the bolts sufficiently, notwithstanding the seal, to permit a wire or other small instrument to be inserted through one or the other of these joints. To overcome this difficulty the patentee proposes to provide sealing members in the form of elongated sleeves surrounding the bolts and bearing against the under surface of the cover around the bolt holes, said front ends of the sleeves being preferably provided with integral, outstanding, annular flanges shaped to tightly contact with the removable housing section.

The patent has five claims, all of which are relied upon. The claims all purport to cover a certain combination of elements. Each claim includes a meter having a stationary housing section and a removable housing section as elements of the combination, and, therefore, the mere making of the brass sealing sleeves is not an infringement unless they are combined with the other elements to make the combination claimed. Nor can the use of a metal ring interposed between the two housing sections be an infringement without the sleeves because claim 1 is the only claim that includes the sealing ring as an element, and that claim also specifies as another element the sealing member for the opening surrounding the bolt and bearing against the inner side of said removable section.

The dominant issue in this case is whether or not the patent is invalid for want of invention. I take it to be well settled that no valid patent can issue for a conception which requires the mere exercise of the skill of the ordinary workman in the particular art as distinguished from the act of invention. The divers patents offered in evidence disclose that there is nothing novel in the idea of sealing the joints in a meter housing to prevent the insertion of wires and interference with proper registration of the current consumed. In fact the Cahill patent describes but two features which are asserted to be novel, and these are wholly independent of each other. They are the use of a hard metal sealing ring interposed between the two housing sections to stop up that joint and the use of elongated sleeves which surround the bolts and have their outer ends in tight contact with the front portions of the housing section to seal those joints.

With reference to the metal sealing ring, the specification of the patent says, at page 1, lines 53–66: "The inner edge of the removable section 2 is formed with a flared flange 3 which encompasses a portion of the

housing section 1 and a ring of felt is usually interposed between the two housing sections, along their line of contact. These felt rings however, are often picked away or cut sufficiently to permit a wire or other small instrument to be inserted for the purpose of stopping the rotating disk 5 of the meter and throwing the recording means 6 thereof out of play. For this soft ring of felt or the like, I substitute a ring 4 of steel or other desired hard material, said ring being preferably, although not necessarily stamped into shape."

This involves nothing more than the substitution of a hard material for a soft material. The mere substitution of equivalents is not such invention as will sustain a patent unless some new and unexpected result flows from the substitution. Hicks v. Kelsey, 18 Wall. 670, 673, 21 L. Ed. 852; Smith v. Nichols, 21 Wall. 112, 118, 22 L. Ed. 566.

■ With reference to the other features of this patent which is asserted to be novel the patent specification, after describing the possibility of throwing the meter out of operation by inserting a wire or some small instrument through one of the bolt holes alongside the bolt, says at page 1, lines 85–96: "To overcome this difficulty, I provide sealing members for the openings 9, said members being preferably in the form of elongated sleeves 11 which surround the bolts 8 and have their outer ends in tight contact with the front portions of the housing section 2, said front ends of the sleeves being preferably provided with integral, outstanding, annular flanges 12 shaped to tightly contact with the removable housing section as shown."

The five claims in connection with the specification clearly show that what the patentee asserted to be his invention was the use in combination with a meter of sealing members or sleeves surrounding the bolts and having an annular, outstanding flange contacting with the inner side of the removable housing section. The prior art, however, shows such sealing members surrounding the bolts and engaging the inner sides of the cover around the bolt holes. These prior patents do not ascribe to the sealing members of the function of preventing the insertion of wires through the bolt holes, but this can make no difference, because they possessed such function and the patentee cannot secure a valid patent merely because he was the first to assign to the sealing members this inherent duty. From this it is apparent that the function of the ring is to close one joint and the sleeve the other. These two sealing devices do not act together; there is no co-operation at all between them, each functions independently of the other. Consequently claim 1, which purports to cover as a patentable combination the meter base, the cover, the bolts extending through the cover, the sealing members for the cover bolt holes, and the metal ring between the base and the cover, is clearly void because it is drawn to an aggregation of elements, not a patentable combination. The principles governing this question of aggregation were early enunciated by the Supreme Court in Hailes v. Van Wormer, 20 Wall. 353, 22 L. Ed. 241, wherein the Court at page 368 said: "It must be conceded that a new combination, if it produces new and useful results, is patentable, though all the constituents of the combination were well known and in common use before the combination was made. But the results must be a product of the combination, and not a mere aggregate of several results each the complete product of one of the combined elements. Combined results are not necessarily a novel result, nor are they an old result obtained in a new and improved manner. Merely bringing old devices into juxtaposition, and there allowing each to work out its own effect without the production of something novel, is not invention. No one by bringing together several old devices without producing a new and useful result the joint product of the elements of the combination and something more than an aggregate of old results, can acquire a right to prevent others from using the same devices, either singly or in other combinations, or, even if a new and useful result is obtained, can prevent others from using some of the devices, omitting others, in combination." Again at page 372 the Court said: * * * "No new operation is given to it by the combination. The same may be said of every other device employed by the defendants, which is also in the complainants' combination. Each produces its appropriate effect unchanged by the others. That effect has no relation to the combination; in no sense can it be called its product. Thus far nothing novel is produced. This, then, is mere aggregation of devices, not invention, and consequently the use of those devices, either singly or together, cannot be held to be any infringement of rights belonging to the complainants." See Tack Co. v. Two Rivers Manufacturing Co., 109 U. S. 117, 120, 3 S. Ct. 105, 27 L. Ed. 877.

It further appears from the evidence that in the year 1925 the defendant inaugu-

rated a systematic policy that was designed to cut down the theft of electrical current. As part of their adopted plan the company considered the use of various mechanical devices which would make it more difficult to tamper with its meters. Shortly after this policy was instituted and within the same year Brown, the foreman of defendant's meter department, designed the brass sleeves shown in meter P–3. He testified that he had never seen or been told of the use of any device at all resembling the brass sleeve that he designed; that he had not even heard of Cahill at that time; and, furthermore, that he did not apply for a patent, because he did not consider he had made an invention.

In 1923, Ben Willard, the local manager of the General Electric Company, was collaborating with the defendant in an effort to prevent tampering with their meters. While engaged in this work he conceived the idea of using sleeves around the bolts with cup-like washers at their upper ends bearing against the inner side of the cover, and made a sketch showing it, which he passed along to his superiors in a letter dated November 9, 1923; however, he did not apply for a patent on that device.

Prior to February, 1923, James Le Blanc designed a galvanized iron meter casing in which there were sleeves surrounding the bolts with conical shaped upper ends bearing against the inner side of the cover. Le Blanc had been informed by meter readers of the practice of dishonest customers, and this device was a product of his scheme to prevent meter cheating.

Cahill filed his first application for patent on March 13, 1924, and he must have thought of his sealing rings prior thereto, though the exact date does not appear to have been earlier than December, 1923. He testified that he did not know Le Blanc.

The fact that four persons residing in the city of New Orleans, all familiar with the theft of electrical current and the ways in which it was accomplished, should each, independently of the others, have thought of the use of flanged sleeves surrounding the bolts and bearing against the inner side of the cover, goes to prove that it was simple and obvious, and that the expedient did not involve invention. Elliott & Co. v. Youngstown Car Mfg. Co. (C. C. A.) 181 F. 345, 349; Thomson Spot Welder Co. v. Ford Motor Co., 265 U. S. 445, 453, 44 S. Ct. 533, 68 L. Ed. 1098.

In my opinion the patentee displayed only the expected skill of his calling, and the patent in suit is invalid and void because the two features asserted to be novel were each a mechanical expedient of the most common sort such as would be produced by the ordinary skilled worker in the art without the exercise of invention.

Having determined that the presumption of validity which arises from the grant of the patent has been overcome, it is unnecessary, in my judgment, to consider the other defenses interposed in this case.

A decree may be entered in favor of the defendant dismissing the bill, with costs against the plaintiffs.