BATCHELLER et al. v. HENRY COLE CO.

No. 3846.

District Court, D. Massachusetts.

July 30, 1934.

Marcus B. May and Herbert A. Baker, both of Boston, Mass., for plaintiff.

Arthur D. Thomson, of Boston, Mass., for defendant.

BREWSTER, District Judge.

This bill of complaint alleges infringement of three letters patent of the United States, issued to the plaintiff Batcheller. Only two of them are now in controversy. These are No. 1,886,517 and No. 1,888,444. The defenses are noninvention, anticipation, and noninfringement.

#### Statement of Facts.

1. On November 8, 1932, letters patent No. 1,886,517 were issued to Batcheller on his application dated September 11, 1931. This alleged invention related to an electric switch of "the push and pull type." On November 22, 1932, letters patent No. 1,888,-444 were issued to Batcheller on his application filed September 11, 1931. This patent relates to a so-called "toggle switch."

2. Both of these switches embody the basic elements of gap-separated terminals with a bridging conductor which in one position closes the electric circuit and in another breaks it. Both are small, low-power switches, designed for use in electric circuits in autos, radio receivers, and household electric appliances.

#### No. 1,886,517.

3. This device is sufficiently illustrated by claim 1 of the patent, which follows:

"1. A push and pull switch comprising a casing including a head having in one end an open chamber, and a sleeve fixed to the opposite end of the head and projecting therefrom; a plurality of annular terminals fixed to and insulated from each other in the said chamber and having circular orifices whose margins constitute annular spaced apart contact surfaces concentric with each other and with the sleeves, each terminal having means for connection with a circuit wire; and a hand piece longitudinally movable in the sleeve and chamber and having a spring-pressed bridging conductor movable by the hand piece to contact either with two annular contact surfaces simultaneously, or with only one of said surfaces, one of said annular contact surfaces being contracted so that its diameter is smaller than that of any other contact surface, the arrangement being such that when the bridging conductor contacts with two annular surfaces, one of which is the contacted surface, removal of the hand piece by outward endward movement thereof is prevented."

Claim 2 adds only slots in the walls of the chamber and shanks on the terminals projecting through the slots.

4. The drawings and specifications disclose a switch of the push and pull type in which the circuit is closed by moving a spherical bridging conductor into engagement with two annular terminals having circular contact surfaces, the ball conductor being carried by a hand piece which is longitudinally slidable and angularly rotatable in a sleeve forming part of the switch casing. The circuit is broken by pressing the hand piece inwardly to move the ball out of contact with one of the annular terminals. To prevent outward movement beyond the desired point, one annular contact surface has a smaller diameter than that of the others. The hand piece is free to rotate through the complete circle of 360 degrees, due to the concentric, circular orifices constituting the contact surfaces.

5. All the elements of the patent were old. With the single exception all are found in British patent No. 206,841 (1924) to Brown, Boveri & Cie. This patent disclosed a push-pull switch with a chamber of in-

sulated material inside of which are insulated annular terminals of conducting material connected to a circuit wire. These rings are concentric with each other and with the sleeve through which a plunger operates. The circuit-closing device comprises a plunger, at the lower end of which are balls so mounted that they are pressed against the annular terminals. As the plunger is moved in or out, a circuit is closed or opened by the ball bridge conductor. This device was intended for use in circuits of high voltage, but it has all of the features of the first claim except the contraction of one of the rings.

6. The use of a spherical bridge conductor associated with annular terminals to open and close circuits in switches was practiced several years before Batcheller's invention by the Signal Manufacturing Company in the construction of a device known as the "Eveready Ball Contact Stoplight Switch."

Other patents, notably Douglas, U. S. No. 1,710,411 (1929), and Klein, U. S. No. 1,240,459 (1917), show push and pull switches of which plaintiffs' device is only a slight modification.

7. Defendant manufactures and sells a push and pull switch which differs from the patented switch only in that it has one annular terminal; the other is U-shape, the orifice of which limits the rotation of the handle to less than 180 degrees.

8. I am unable to find from the evidence that plaintiffs' switch with its ball bridging conductor possesses any advantage over earlier means of making and breaking electric switches on currents of small voltage such as is illustrated by Douglas' device. Plaintiff testified that the cost of manufacturing his switch was 10 per cent. to 20 per cent. less than the old style, but this apparently results, not so much from the novel construction, as from the materials of which it is made.

### No. 1,888,444.

9. This patent relates to toggle switches and carries five claims, all of which are more or less involved. Claims 1 and 5 are the claims said to be infringed by several of defendant's switches. Claim 1 is as follows:

"1. A toggle switch comprising a tubular casing having means for attachment to a support and provided at its outer end with an internal ball seat and an oblong guiding slot in said seat; a hand piece including a ball portion adapted to turn on said seat, and a handle portion movable in a predetermined path in the guiding slot; a bridging conductor carried by said ball portion and pressed outwardly by a spring in a radial guiding recess therein, gap separated terminals provided with circuit wire-engaging means and including an inner and an outer terminal, said terminals being formed and arranged to contact simultaneously with the bridging conductor when the hand piece is in a given position, only the inner terminal contacting with the conductor when the hand piece is in another position; and insulating confining means for said terminals, fixed to the inner end portion of the casing and to said terminals, and insulating the terminals from each other and from the casing."

10. Claim 5 differs only in two respects. It specifies a spherical bridging conductor and a detent on the inner terminal. Claims 2, 3, and 4 cover details of construction in the ball seat and with respect to the terminals and insulating members. These claims are also alleged to be infringed by some one of defendant's switches.

11. The patented switch may be described as a toggle switch comprising a casing having the usual rocking lever or hand piece mounted for oscillation in an oblong guiding slot and provided with a spring-pressed spherical bridging conductor; a base of insulating material carrying one central and two outer contacts so arranged that the ball conductor may be engaged with the central and one outer terminal to close the circuit and with only the central terminal to open it. The central terminal shows a detent to hold the conductor in place when in its "off" position.

12. The defendant has cited against this patent prior patents covering toggle switches which embody the essential elements of plaintiffs' device and which are designed for use in autos, radios, etc., with a circuit of low voltage. I refer to Preston, U. S. No. 1,509,071 (1924), Blauvelt, U. S. No. 1,667,965 (1928), Loebl, British No. 25,830 of 1907. Without going too deeply into this prior patented art, it will be enough to say that the disclosures differ from plaintiffs' only in a few relatively unimportant details of construction. In each of the cited patents there is shown a central terminal and one or more outer terminals, a bridging conductor pressed against the terminal, or terminals, by means of springs; a toggle member with handle which moves in a predetermined path closing the circuit when in

one position and opening it when in another. In none of them, however, is the bridging conductor spherical. The nearest approach is seen in Preston, where the conductor is semispherical.

13. The defendant manufactures several different models of toggle switches, some of which are alleged to infringe. Specifically, it is now contended that six different modifications of the toggle type infringe claims 1 and 5 of the patent in suit. These are identified in defendant's Nos. 1030 J, 1030 G, 1030 M, 1130, 1150, and 3030. Two others, Nos. 1050 and 1080, and the latest model of 3075 are said to infringe claim 5 only. These switches fall into two groups: (a) Those that close only one circuit, and (b) those that close two or more circuits. The switches of the first group differ from one another only in some minor detail of construction not material to any issue here. They all have a tubular casing; a handle mounted therein for oscillation in a guiding slot; the spring-pressed bridging ball conductor; a base of insulating material carrying a central or inner terminal and an outer terminal; and means to connect the terminals with the electric circuit. The inner terminal is circular, but it is not indented to hold the ball conductor in place in the "off" adjustment. Unlike plaintiffs' switch, the contact for closing the circuit is made by tilting the handle only one way. In other words, plaintiffs' switch, as described in the drawings, is provided with two outer terminals, whereas defendant's switch of this group is provided with only one outer terminal.

The switches of defendant's manufacture belonging to the second group are provided with one central terminal and three outer terminals and the handle is so mounted as to be capable of being moved into four positions, thus closing any one of three circuits when not in the "off" position.

14. The only element in defendant's switches not found in the prior art is the ball conductor, which had never appeared in toggle switches in a combination such as Batcheller discloses. I am not able to find, however, that the ball conductor is any improvement over the semispherical bridging conductor shown in Preston's patent. Preston's performs the same function in precisely the same way. So also does the "contact end" of Blauvelt's, which patent incidentally shows two outer and one central terminal, so that a circuit is closed by tilting the switch lever either way.

15. In June, 1930, Batcheller licensed the F. C. Hersee Company to manufacture toggle, push and pull, and rotary switches under his applications upon which Nos. 1,886,-517 and 1,888,444 were issued. In 1930 the Hersee Company manufactured and sold approximately 350,000 switches; in 1931, 750,000; in 1932, 191,000. In June, 1932, the Hersee Company was adjudicated bankrupt. According to the terms of the license agreement, bankruptcy terminated the license. Batcheller then granted a new license to the plaintiff Ætna Motor Products Company, which continued the manufacture and sale of the three types of switches, selling about 185,000 in 1932 and 800,000 in 1933. How many of these sales related to toggle switches or to push and pull switches does not appear. Nor is it clear that the demand was attributable in any way to whatever of patentable novelty resided in the switch. The evidence does not establish plaintiffs' claim that the Batcheller switches were less expensive to buy, or more profitable to sell, than other switches for similar purposes to be found in the prior art.

16. The defendant purchased, in ignorance of the existence of any pending applications for patents on the products of the Hersee Company, certain assets of that company from its trustee in bankruptcy including good will, trade-names, and also including a quantity of switches already manufactured by the bankrupt corporation, as well as a quantity of unassembled parts of switches of both types. The switches so purchased have been sold by the defendant. The parts have been assembled and the completed product sold.

17. Except as to these switches, thus acquired from the Hersee Company, the defendant has manufactured only switches with the modifications described in paragraph 13 of this statement.

18. The patents considered above were all cited in the Patent Office.

### Conclusions of Law.

■ It is common knowledge that electric switches such as are shown in the patents in suit involve principles long known and easily understood and applied. Batcheller was confronted with no problem difficult to solve. His devices belonged to an old and well-developed art crowded with various modifications and adaptations in structure and design. Batcheller's contribution was not great, and one of the questions is: Was it

patentable invention? Concededly, the patent is for a combination, and a combination of old elements. The only feature that was added to the push and pull switch of Douglas, or the toggle switch of Preston, or of Blauvelt, was the use of the ball bridging conductor. This was the substitution of one old element for another. The substituted element performed the same function, in the same way, and with the same result. Such substitution will not sustain a patent. Cahill v. New Orleans Public Service, Inc. (D. C.) 35 F.(2d) 534; Wailes Dove-Hermiston Corp. v. Oklahoma Contracting Co. (D. C.) 48 F.(2d) 901.

█ Spherical bridging conductors in electric switches and spring pressed against the terminals were known long before Batcheller entered the field, both in the patented and practical art. In Re La Montagne, 47 F. (2d) 975, at page 976, the Court of Customs and Patent Appeal, in denying validity to claims for a patent, said:

"It is well established that, if an applicant has taken one feature from one patented device and another feature from another patented device and combined them, and has produced no results other than were produced by the original devices in their individual operation, then he has invented nothing. In re Bayer, 35 F.(2d) 66, 17 C..C. P. A. 614; In re Appelburg, 37 F.(2d) 620, 17 C. C. P. A. 820; In re Isherwood, 40 F. (2d) 987, 17 C. C. P. A. 1187."

The addition of a new element to the combination is not invention unless the added element is one not plainly indicated by the prior art. American Fruit Growers, Inc., v. Brogdex Co., 283 U. S. 1, 51 S. Ct. 328, 75 L. Ed. 801; Electric Cable Joint Co. v. Brooklyn Edison Co., 54 S. Ct. 586, 78 L. Ed. 1131, decided April 2, 1934.

██ Batcheller cannot claim patentable invention by reducing the size of the switch to meet the requirements of the auto or the radio; a mere change in proportion involves only mechanical skill and does not amount to invention. Powers-Kennedy Contracting Corp. v. Concrete Mixing & Conveying Co., 282 U. S. 175, 51 S. Ct. 95, 75 L. Ed. 278. Nor is it invention in this case to adopt different materials in the construction of the device. In re Holst (Cust. & Pat. App.) 44 F.(2d) 875.

█ If one applies the oft-repeated formula that that which infringes if later anticipates if earlier, the result will lead to invalid claims. In a recent opinion of the Supreme Court, there is to be found a good statement of what constitutes infringement. In Sanitary Refrigerator Co. v. Winters, 280 U. S. 30, 41, 50 S. Ct. 9, 12, 74 L. Ed. 147, the court observes:

"There is a substantial identity, constituting infringement, where a device is a copy of the thing described by the patentee, 'either without variation, or with such variations as are consistent with its being in substance the same thing.' Burr v. Duryee, 1 Wall. 531, 573, 17 L. Ed. 650. Except where form is of the essence of the invention, it has little weight in the decision of such an issue; and, generally speaking, one device is an infringement of another 'if it performs substantially the same function in substantially the same way to obtain the same result. * * * Authorities concur that the substantial equivalent of a thing, in the sense of the patent law, is the same as the thing itself; so that if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape.' Union Paper Bag Machine Co. v. Murphy, 97 U. S. 120, 125, 24 L. Ed. 935. And see Elizabeth v. Pavement Co., 97 U. S. 126, 137, 24 L. Ed. 1000. That mere colorable departures from the patented device do not avoid infringement, see McCormick v. Talcott, 20 How. 402, 405, 15 L. Ed. 930. A close copy which seeks to use the substance of the invention, and, although showing some change in form and position, uses substantially the same devices, performing precisely the same offices with no change in principle, constitutes an infringement. Ives v. Hamilton, 92 U. S. 426, 430, 23 L. Ed. 494. And even where, in view of the state of the art, the invention must be restricted to the form shown and described by the patentee and cannot be extended to embrace a new form which is a substantial departure therefrom, it is nevertheless infringed by a device in which there is no substantial departure from the description in the patent, but a mere colorable departure therefrom."

Applying this test, defendant's switches would infringe plaintiffs' patents, but so also would Douglas, Preston, Blauvelt, and Loebl, all earlier patentees. This is enough to defeat the later patent. American Fruit Growers, Inc., v. Brogdex Co., supra; Knapp v. Morss, 150 U. S. 221, 228, 14 S. Ct. 81, 37 L. Ed. 1059.

I do not overlook the fact that patents referred to in these conclusions were before

the Patent Office or that Batcheller's switches were sold in considerable quantities, though apparently not with profit to the Hersee Company, but the presumptions arising from these facts cannot prevail in view of the prior patents in evidence and the auto stop-switch, publicly known and used in this country long prior to Batcheller's date of invention.

I accordingly rule that both patents are invalid, both because they are anticipated and because patentable invention is not shown. I have no hesitation in concluding that the several details of design or construction suggested in the claims and urged by plaintiffs, such as slots and shanks projecting therethrough, do not involve invention, and, moreover, they each lacked the characteristic of novelty.

The bill may be retained for the injunctive relief prayed for respecting patent United States 1,888,445, concerning which there is no controversy. No relief in this suit can be granted respecting United States No. 1,886,517 and No. 1,888,444.