## EMBANKMENT PATENT CO. v. MILLER et al.

### No. 20301.

District Court, E. D. Louisiana.

Sept. 28, 1934.

A. L. Heiskell, of Memphis, Tenn., and A. R. Martinez, of New Orleans, La., for plaintiff.

Luther E. Hall, of New Orleans, La., for defendants.

BORAH, District Judge.

This is a suit in equity under section 4921, Rev. St., as amended by Act March 3, 1897, § 6 (35 USCA § 70 and note), charging the defendants with infringement of United States letters patent No. 1,733,136 issued October 29, 1929, to Arthur J. Shea, and now owned by the plaintiff.

The patent relates to a method of building levees and embankments, and more particularly to a method for doing this where the cross-section of the embankment is such as to require transportation of the material from a remote point in order to secure sufficient material for the purpose. The defendants are said to infringe because of its use of this method in constructing a part of the guide levees at the Bonnet Carre spillway.

The defendants admit the infringement if the patent is valid, but maintain that it is void, in that the matter claimed therein does not involve invention, or, if it does, that the patent is nevertheless invalid, in that it was issued to a patentee who was not the first inventor.

At the outset, and in order that this opinion may disclose completely what the patent involved really covers, it will be well to quote in full the two claims in the patent which are involved in this suit. Claim 1 provides for: "The method of building a levee or permanent embankment which comprises excavating a temporary dump-pit on the site of the proposed embankment, loading material at a remote point, transporting such material to and·dumping same into said pit, removing the material from said pit and depositing it to form a levee or permanent embankment until said embankment encroaches on the dump-pit, and in then abandoning and filling the dump-pit with the excavated material and continuing the building of the embankment over said dump-pit."

Claim 2 is as follows: "The method of building a permanent embankment by longitudinal extension, which comprises excavating a temporary dump-pit lying within the area to be occupied by the embankment, excavating and transporting material to and dumping same into said pit, removing the material from the pit and placing same directly on said embankment, and as said embankment encroaches on said pit, then in advancing the pit in a line longitudinally of the embankment, and in successively filling the abandoned portion of the pit with the material excavated so as to continue the building of the embankment over the successively abandoned portions of the pit."

From a reading of .these claims, it is apparent that they are almost identical, and the only existing difference between them lies in the fact that in claim 2 a continuous longitudinal pit is used, while in claim 1 the pit may be either lengthwise or crosswise. Considering the breadth of these claims, it will be observed that the patent in suit is not limited to the building of levees, but covers any kind of permanent embankments; that the temporary dump-pit is not restricted to any particular shape or dimensions, nor is it confined to any particular location, save that it must be within the area that the embank-

ment covers, and that no claim is made for the means of transporting the dirt or material, nor for the means or method of removing it from the pit.

The plaintiff claims that the essence of his patent is the temporary dump-pit, and that the novelty and invention consists in the idea of utilizing a temporary pit on the site of the proposed levee for the purpose of forming a reservoir from which to take dirt to rehandle into a large cross-section levee and in abandoning the pit as the levee progresses and building the embankment thereover to form a permanent composite structure. It is admitted that there is nothing novel in the idea of a ditch, trench, or pit within the confines of a levee, and, indeed, the testimony shows that the old muck ditch or search ditch that has been used ever since levees were built was a ditch, trench, or pit within the confines of the levee. It is also admitted that it has been a practice of long standing in the building of levees or other embankments to haul material from a distance and to dump that material on the site of the levee or embankment and then pick it up with a drag line and place it on the levee. It is also admitted by the plaintiff to be old to handle various materials such as gravel, coal, etc., by unloading the material from cars into a pit, trench, or ditch alongside the tracks and to handle it from there with machines. However, it is claimed that the temporary feature of the Shea pit constitutes the invention and is distinguishable from the muck ditch or search trench because the former is used as a kind of reservoir for storing dirt and it is emptied and refilled, emptied and refilled. Plaintiff also seeks to distinguish this pit reservoir from other pit reservoirs which had been used for years in the handling of gravel, coal, and similar materials by saying that the pit which it uses is temporary and the embankment constructed is permanent, while in the gravel and coal business the pit is permanent and the embankment is temporary.

The purpose of using a pit is twofold: First, in order that the cars will dump clean; and, second, to provide a reservoir for the material. The handlers of gravel, coal, and other material had accomplished these two objects, and they did so by means of a pit dug alongside of railroad tracks, and plaintiff admits that this practice was in vogue long before this invention. The Shea method has for its object the accomplishment of the same two ends, but it is claimed that his con-

ception involves invention and is an advance over the known art because he fills the pit after he is through with it.

As to the inventive skill it took to conceive this method, plaintiff's principal witness testified that, if a drag line operator running temporarily out of dirt would bite his bucket a little into the surface of the ground, thereby digging a small trench, he would have invented Shea's method. Other witnesses who have had vast engineering experience have testified as to several instances in the building of levees where a method very similar to the Shea method was used as far back as the year 1908, and have expressed it as their opinion that there was nothing novel in the operation.

Mr. Gallagher, a witness for the defendants, testified that in his capacity as superintendent for Nash Bros., contractors, he handled dirt by the method claimed by Shea from October, 1923, to April, June or July, 1924, while his company was building a coal-crushing outfit for the Commonwealth Edison Company in Chicago. During this construction work he built a permanent railroad embankment 600 or 700 feet long, having a 30 to 35 foot base with its height sloping up from nothing to 12 to 14 feet. In the building of this permanent embankment, which is in existence to-day, he excavated a temporary dump-pit on the site of and within the area to be formed by the embankment, and before dumping any dirt he excavated a ditch alongside the railroad tracks. The tracks were on the natural surface of the ground alongside the embankment to be formed, and the pit was dug 2 to 5 feet below the natural surface and within the area and on the site of the embankment which was to be built. The material was loaded at a remote point 1,000 to 1,500 feet from the embankment, and was transported on standard gauge railroad cars and dumped into the pit, from where it was removed by a drag line and deposited directly on the embankment, and as the embankment encroached on the pit it was abandoned and filled and the embankment was built over it. He testified that a short pit was excavated as needed just as he went along, and that as the embankment was completed it encroached on and entirely filled the pit; that as he went along he abandoned the pit and filled it up with the transported material and extended it longitudinally. Mr. Gallagher further stated that the purpose of digging the pit was in order that the cars would dump clean, and this is precisely one of the claimed

advantages of the Shea method. The witness also testified as to a similar method of hauling dirt which he used in 1922.

Ralph Burke, another witness for the defendants, testified that in the spring of 1921, in his capacity as chief engineer and superintendent for T. J. Forschner Contracting Company, he used a similar method of handling dirt in building the Calumet Sewerage Treatment Works for the Chicago sanitary district. In this work he was obliged to excavate a site for a battery of tanks and build an embankment out of the excavated material, and in doing so he handled the dirt by the Shea method. A railroad track was laid on the natural surface of the ground extending longitudinally along one edge of the space upon which an embankment 1,000 feet in length by 150 feet in width and about 30 feet high was to be built. The material was transported between a quarter and a half mile on standard gauge side dumping cars to the site of the embankment and two drag line machines handled the dirt as it arrived, a pit or trench below the natural surface of the ground alongside and parallel to the tracks having first been excavated so that there would be room for the cars to dump clean. As the dirt was dumped from the cars into the pit, which was 5 or 6 feet deep and about 10 to 20 feet wide, it was handled from there on to the embankment. The pit was dug on the site of and within the area of the embankment, and it was used as a temporary reservoir, the dirt being successively dumped and handled with a drag line, and it was not filled up permanently and abandoned until the embankment encroached upon and above it. The pit was thus dug in successive stages, and as the work progressed it was extended longitudinally. This witness also testified that he used the same method during the summer of 1927.

The fact that two persons, apart from the defendants who were in ignorance of Shea's asserted invention, independently of each other used the identical Shea method in whole and in all its parts years before the patentee's claimed discovery, goes to prove that the method is obvious and that it does not involve invention. Elliott & Co. v. Youngstown Car Mfg. Co. (C. C. A.) 181 F. 345, 349; Thomson Spot Welder Co. v. Ford Motor Co., 265 U. S. 445, 453, 44 S. Ct. 533, 68 L. Ed. 1098. I take it to be well settled that to grant to a single party a monopoly on every slight advance made, except where the exercise of invention somewhat above ordinary mechanical or engineering skill is distinctly shown, is unjust in principle and injurious in its consequences.

In my opinion, the patentee displayed only the expected skill of his calling, and the patent in suit is invalid and void because it involves only the exercise of the ordinary faculties of reasoning. Hollister v. Benedict & Burnham Mfg. Co., 113 U. S. 59, 5 S. Ct. 717, 28 L. Ed. 901.

The presumption of validity which arises from the grant of the patent has been overcome, and a decree may accordingly be entered in favor of the defendants dismissing the bill, with costs against the plaintiff.